## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### NORTHERN DIVISION

| | |
|---|---|
| Gina Argenbright, individually and on behalf of all others similarly situated, | 1:21-cv-05082 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Bob's Discount Furniture, LLC and Guardian Protection Products, Inc., | |
| Defendants | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Bob's Discount Furniture, LLC ("Defendant Bob's") markets, promotes, and sells insurance under the guise of "service contracts," referred to as "Goof Proof Protection" ("Goof Proof" or "Product"), and administered by Guardian Protection Products, Inc. ("Defendant Guardian"), in connection with its sale of furniture.

2. The definition of "goof" is to make a foolish or careless mistake, or a slip.

3. "Goof" is also defined as "to engage in playful activity."

4. Defendant Bob's specifically defines Goof Proof as offering coverage for accidental damage.

5. Consumers understand the coverage will thus be broad, including damage from mistakes or inadvertent misuse on their part, and accidents which they had no part in.

6. When purchasing tangible goods, consumers often rely upon product warranties by

the seller to guard against possible future repair costs.[1]

7.     However, manufacturers and retailers sell product guarantees such as extended service warranties ("ESW"), often referred to as service contracts, which lengthen the term of a product's usual guarantee.

8.     Such service contracts are intended to fulfill the purpose of an extended warranty by providing either actual repair or replacement or by offering financial reimbursement for the necessary repair or replacement of consumer products.

9.     Moreover, independent corporations which neither manufacture nor sell consumer products sell third-party service contracts to consumers.

10.     The arrangement between Defendant Bob's and Defendant Guardian is a hybrid one, because Defendant Guardian is not a manufacturer or retailer, and Defendant Bob's sells the items.

11.     Legislative and administrative bodies have been concerned that third parties, who neither sell nor manufacture the guaranteed product, may fail to disclose essential coverage terms, refuse to cover expenses under the contract, or decline to provide adequate service for the product guaranteed.

## I.     INSURANCE INVOLVES RISK

12.     "Insurance" is defined as an agreement by which the insurer, for consideration, agrees to indemnify the insured against loss or damage to property for a specified period, by reason of specific perils.

13.     To offer insurance, a corporation must possess a minimum level of assets and create a reserve fund from the premiums it collects.

---

[1] Keyvan Samini, "Third Party Extended Warranties and Service Contracts: Drawing the Line Between Insurance and Warranty Agreements." *Ohio St. LJ* 54 (1993): 537.

14. A company selling insurance is required to be registered with Illinois and prove it has sufficient financial capacity to honor its promises to consumers.

15. Compliance with state insurance regulations is a difficult task, perhaps intentionally.

16. If it were simple and quick to sell insurance, the number of fly-by-night operators would proliferate, to the detriment of consumers.

17. As a result, many corporations which provide agreements amounting to product insurance take steps to characterize such relationships as service contracts or warranties rather than insurance.

18. The requirements for a service contract provider are less onerous than a provider of insurance.

19. Companies selling extended warranties and service contracts spend between four and fifteen cents of each dollar collected for service, while the rest is profit.

20. Entities which sell service contracts have no incentive to create a reserve fund which will cover their contractual obligations should they become insolvent.

21. The inability to fulfill policy obligations was one of the prime rationales for instituting insurance regulation decades ago.

## II. SERVICE CONTRACTS ARE INTENDED TO PROVIDE SERVICING OF PRODUCTS

22. 215 ILCS 152/5 defines a "service contract" as:

a contract or agreement whereby a service contract provider undertakes for a specified period of time, for separate and identifiable consideration, to perform the repair, replacement, or maintenance, or indemnification for such services, of any automobile, system, or consumer product in connection with the operational or structural failure due to a defect in materials or workmanship, or normal wear and tear, with or without additional provision for incidental payment or indemnity under limited circumstances, for related expenses, including, but not limited to, towing, rental, and emergency road service.

23.    Defendant Bob's sells third-party service contracts on behalf of Defendant Guardian.

24.    A description of the Goof Proof plan is provided in small print on the bottom of the second page of documents provided to consumers with their purchase receipts:

**Goof Proof Protection…**

Bob's Goof Proof is the best way to protect your investment from a wide variety of **accidents** for 5 years... If you purchased a Goof Proof Protection Plan and accidentally stain or damage your furniture, then please report the mishap within 30 days of the accident. Call **Guardian** at (800) 538-9500 to report *accidental* stains or damage to your **furniture**. Call **PureCare** at (800) 758-8563 to report accidental stains or damage to your **mattress**. Complete Goof Proof Plan Terms and Conditions can be accessed at the **www.mybobs.com** home page by clicking the Bob's Goof Proof Plan link under Customer Care on the bottom left of the page. (emphasis in original).

25.    Defendant Guardian, upon information and belief, collaborates with Defendant Bob's in drafting the language and marketing material for the Goof Proof plans.

26.    Defendants describe the Goof Proof plan as a "service contract."

27.    This third-party service contract satisfies the elements of the definition of insurance.

28.    Defendant Guardian – via Defendant Bob's – forms a contract with the customer for a specific period of five years.

29.    The customer has an insurable interest in the maintenance of their furniture.

30.    The customer pays consideration to Defendant Bob's for the Goof Proof plan, which is remitted, in part, to Defendant Guardian.

31.    Defendant Guardian, in theory, assumes the risk by agreeing to indemnify the insured

for potential pecuniary loss to the insured's property resulting from certain specified perils – "accidental[ly] [stain or] damage."

### III.   "GOOF PROOF" IS INSURANCE

32.     The documents presented to consumers describe Goof Proof as the best way to "protect your investment from a **wide variety of accidents** for 5 years." (emphasis added).

33.     The description of Goof Proof as coverage for accidents is inconsistent with the definition of a service contract, which entails the

> repair, replacement, or maintenance, or indemnification for such services, of any automobile, system, or consumer product in connection with the operational or structural failure due to a defect in materials or workmanship, or normal wear and tear.

34.     Goof Proof explicitly does not promise to repair, replace, or maintain the furniture, in connection with its "operational or structural failure due to a defect in materials or workmanship, or normal wear and tear."

35.     Goof Proof is intended to cover fortuitous events, or those that happen by accident or chance, rather than by design.

36.     The fortuity principle is central to insurance.

37.     An insurer will not be expected to provide coverage for a loss that is reasonably certain or expected to occur within the policy period.

38.     The insured cannot reasonably expect that all losses, however caused, would be reimbursed.

39.     This would grant a windfall to the insured.

40.     The insurer cannot confine causation to the point where recovery would be impossible, thereby affording a windfall in the other direction.

41.     Equity is achieved by requiring that the loss be accidental or fortuitous – out of the

reasonable control and expectation of both the insurer and insured.

42.    The requirement of fortuity ensures that the scope of coverage provided is consistent with the reasonable expectations of the contracting parties.

43.    Fraud occurs when a policy is misused to insure a certainty – either the insured intentionally damaging the property to recover on the policy or the insurer denying claims in bad faith or restricting the criteria to recover under the policy.

44.    Both of these scenarios are detrimental and contrary to public policy, as they allow for profit from wrongdoing.

45.    Goof Proof is insurance not merely because it involves a third-party, Defendant Guardian.

46.    As Defendant Guardian does not manufacture or sell the products it agrees to insure, it accepts risk that it is unaware of with respect to customer usage of the products, risk that Defendant Bob's, due to its expertise in the industry, would be aware of.

47.    Service contracts were originally described sold by the manufacturer or seller, which had a greater connection to, and knowledge of, the products and risk associated with insuring it.

48.    While this entailed risk, it was able to better evaluate the likelihood of the need for the services offered, and tailor its policies accordingly.

49.    Insurance policies are generally issued by third parties and are based on a theory of distributing risk among many customers.

50.    An example of a service contract is where an automobile manufacturer agrees to repair or replace certain parts on a vehicle it manufactured and sold, should those parts fail or break down within a specified period, i.e., 5 years or 50,000 miles.

IV.    PLAINTIFF'S FACTS

51.     On February 27, 2019, Plaintiff went to Defendant's store, 545 S Route 59, Aurora IL 60504, to look at furniture.

52.     Plaintiff purchased the Louie Louie Gray Queen Bed, Article 20051513, for $299.00, consisting of the Louie Louie Gray Queen Rails, Article 20038048047, and the Louie Louie Gray Queen Headboard/Footboard, Article 20038048048.

53.     Plaintiff purchased the Goof Proof coverage for $39.99 for the bed.

54.     The first page of the sales receipt Plaintiff received referenced Standard Order number 11481458 and identified her as Customer # 7409683.

55.     In or around November 2020, the wooden slats underneath the Louie Louie Gray Queen Bed broke when Plaintiff got into bed.

56.     Plaintiff did not intentionally get into her bed seeking to break the frame, as she had gotten into the bed on numerous occasions prior to the breakage.

57.     Plaintiff submitted her claim to Defendant Guardian and was assigned a Ticket Number.

58.     Defendant Guardian's representative requested that Plaintiff submit additional information for the processing of her claim, which she did.

59.     In December 2020, Defendant Guardian denied Plaintiff's claim, on the basis that she was not using the product as intended.

60.     When Plaintiff contacted Defendant Bob's again after the denial by Defendant Guardian, a representative of Defendant Bob's, "Nichole R.," stated, "Guardian is for accidental protection  damage only. If [sic] your using the merchandise as intended that would not be considered an accident. That is why Guardian denied the claim."

61.     The Goof Proof service contract purported to provide coverage from "accidental

damage."

62.     Plaintiff's claim was denied because Defendant Guardian characterized the breakage of the bed as non-accidental.

63.     It is false and deceptive for Defendant Bob's to market an insurance product that promises to provide coverage for "goofs," yet also describe Goof Proof as coverage for accidents.

64.     Consumers understand the term "Goof Proof" broadly to mean "mistake proof," i.e., if something goes wrong with furniture, they will be covered if they purchased Goof Proof.

65.     Consumers understand the term "Goof Proof" to mean they will receive coverage in event of accidental damage, which is how Defendant Bob's describes it.

66.     Defendant Guardian denies most claims based on "misuse."

67.     However, the definition of "Goof" encompasses "misuse," even inadvertent misuse.

68.     Defendant Bob's describes Goof Proof as providing coverage for accidents, yet the name of the coverage implies coverage for inadvertent misuse.

69.     Defendant Bob's promises more than it delivers.

70.     Regardless of how the service is defined, Defendant Guardian refuses to cover valid claims, which Illinois law requires it to.

**V.     "GOOF PROOF" IS MARKETED DEECPTIVELY AND UNLAWFULLY**

71.     To permit the sale of products which are tantamount to insurance but without the protections and restrictions imposed on insurance contracts, is a public harm the Illinois legislature sought to prevent.

72.     The experience of Plaintiff fits squarely within the policy rationale for limiting the scope of service contracts.

73.     This is because the issuing and insuring parties – Defendant Bob's and Defendant

Guardian – can deny coverage to customers based on almost any basis.

74. Rips, tears, breaks and punctures are described by Defendant Bob's and Defendant Guardian as "defects" for which Plaintiff and class members were denied coverage.

75. Plaintiff and class members purchased purported service contracts to protect their furniture against "accidental damage."

76. Likewise for breakage of furniture, as experienced by Plaintiff.

77. The latter scenario is fortuitous and would trigger classification of the service contract as an insurance contract.

78. The discount nature of the furniture creates extra incentive to purchase the Goof Proof products.

79. This is because consumers know intuitively that lower-priced furniture may not be as sturdy or resistant to accidental stains or tears as higher-priced furniture.

80. Therefore, it makes sense to spend extra on a warranty to cover these potential issues.

81. Upon information and belief, Defendant Bob's receives incentives from Defendant Guardian for every warranty it sells to consumers.

82. Defendant Bob's sales personnel receive bonuses for the number of Goof Proof products they sell.

83. Defendant Bob's sales personnel can be penalized if they do not sell a specific number of Goof Proof products during a time-period.

84. This creates an incentive for personnel to give consistently false misrepresentations about the nature, type, and extent of the Goof Proof products.

85. The salesperson conveyed to Plaintiff that Goof Proof would cover "anything and everything," when Plaintiff asked questions about purchasing the coverage.

86. Since the furniture is not of the highest quality, the Goof Proof plans are especially misleading and deceptive.

87. This means Defendant Bob's and Defendant Guardian can more easily and unfairly attribute any stain, break, or rip to a product defect, when there might be cause for overlap between what caused the damage.

88. However, when customers submit claims for one of the covered reasons, they are denied with the explanation that the damage or stain was not "accidental," but due to misuse.

89. Defendant Bob's and Defendant Guardian regularly deny claims if a customer cannot identify the exact date within a 30-day period when a stain or damage occurred.

90. Not noticing a stain, damage, or break, on the day it occurred is a common circumstance, especially if the furniture is used by other persons within a household and not exclusively by the person who purchased the Goof Proof product or their authorized representative.

91. Additionally, if there is more than one marking or puncture on the furniture, the claim will be denied on the basis that the item was "misused."

92. However, it is not expected that a customer would submit a claim for the most minor and less visible markings or tears.

93. Defendant Bob's and Defendant Guardian regularly deny claims based on the issue being categorized as "accumulated [stains/tears/etc]," "frame defects," "repetitive" or "preventable."

94. Customers submit pictures of the items for which coverage is sought, and Defendant Bob's and Defendant Guardian will seek to identify other markings or rips, even in other areas of the furniture, and deny claims on this basis.

95. Defendant Bob's and Defendant Guardian have not reasonably defined what types

of stains, rips, etc., are "excessive" and the application of this criteria results in denial of valid claims.

96. Regardless of the three card Monty game which purports to offer coverage from accidents and "misuse," the coverage is a scam and worthless.

97. Defendant Bob's and Defendant Guardian encourage consumers to use cleaning products sold and/or provided by Defendant Bob's, to attempt to remedy stains or markings.

98. This delays the time within which customers file their claims, resulting in filing dates beyond the permitted 30 days.

99. When consumers do submit claims, they face long waits to speak with representatives, are told they will be contacted by someone, and no one calls back.

100. Calls by consumers such as Plaintiff are often "disconnected" because the representatives of Defendant Bob's and Defendant Guardian are evaluated on the length of their calls with claimants.

101. Customers must navigate confusing endless circular phone trees which lead to being disconnected.

102. Defendant Bob's and Defendant Guardian's actions – the sale of insurance contracts as service contracts – causes harm to Plaintiff and class members.

103. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of a product or service being sold, relative to itself and other comparable products or alternatives.

104. The value of the Goof Proof Products that plaintiff purchased was materially less than its value as represented by Defendant Bob's and backed up by Defendant Guardian.

105. Defendant Bob's sold more of the Goof Proof Products, and at higher prices than it

would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

106.  Defendant Guardian reaped greater profits based on Defendant Bob's sale of more Goof Proof plans.

107.  Had Plaintiff and proposed class members known the truth, they would not have bought the Goof Proof plans or would have paid less for it.

Jurisdiction and Venue

108.  Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

109.  Upon information and belief, the aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

110.  Plaintiff is a citizen of Illinois.

111.  Defendant Guardian Protection Products, Inc., is a North Carolina corporation with a principal place of business in North Carolina.

112.  Plaintiff is a citizen of a different state than Defendant Guardian.

113.  Venue is in this district because a substantial part of the events or omissions giving rise to the claim occurred here.

114.  Plaintiff resides in this district and within this Division of this District, which is where she purchased the Products and Goof Proof, where the damage to the Product occurred, and where she sought coverage and where it was denied.

Parties

115.  Plaintiff is a citizen of Oak Lawn, Cook County, Illinois.

116.  On February 27, 2019, Plaintiff went to Defendant's store, 545 S Route 59, Aurora

IL 60504, to look at furniture.

117. Plaintiff purchased the Louie Louie Gray Queen Bed, Article 20051513, for $299.00, consisting of the Louie Louie Gray Queen Rails, Article 20038048047, and the Louie Louie Gray Queen Headboard/Footboard, Article 20038048048, with Goof Proof coverage.

118. Plaintiff received a Sales Receipt which listed her purchases, how much she paid, and who her salesperson was.

119. At the bottom of Plaintiff's sales receipt, it states:

**The above information is accurate.**

**Customer Signature _____**

For service after delivery please call Bob's Customer Care line at (860) 474-1000 or (800) 569-1284

The information contained on the subsequent pages of this document is an integral part of the agreement between the buyer and the seller.

120. Plaintiff was not given this document until after she made her payment to Defendant Bob's.

121. Plaintiff was not asked to sign in the space for "Customer Signature" prior to, or even after, her purchase.

122. Plaintiff was not given notice of the information at the bottom of this page or any other information on other pages.

123. The second page of the Sales Receipt contains a significant amount of text in small print, with the following headings:

- Cancellations, Returns and Refunds

- We're Delivering Your Furniture

13

- You're Picking Up Your Furniture

- Limited Warranty and Product Service Policy

- Goof Proof Protection

- Protecting Your Privacy; and

- Resolution of Disputes.

124. The Goof Proof Protection section on each of their documents is identical, but for the identification of the company to whom accidental stains or damage to a mattress should be reported.

> Bob's Goof Proof is the best way to protect your investment from a wide variety of accidents for 5 years…If you purchased a Goof Proof Protection Plan and accidentally stain or damage your furniture then please report the mishap within 30 days of the accident. Call **Guardian** at (800) 538-9500 to report *accidental* stains or damage to your **furniture**. Call [**PureCare/FabricTech**] at (800) 758-8563 to report *accidental* stains or damage to your **mattress. Complete Goof Proof Plan Terms and Conditions** can be accessed at the www.mybobs.com home page by clicking the Bob's Goof Proof Plan link under Customer Care on the bottom left of the page.

125. The Resolution of Disputes sections states, upon information and belief, in substantial part:

> Any and all claims and/or disputes between you and Bob's arising out of and/or related to this agreement, any products and/or services sold and/or purchased through Bob's, and/or any performance of any services related to this agreement must be resolved exclusively by final and binding arbitration before a single arbitrator pursuant to the rules of the American Arbitration Association ("AAA"). The parties shall split the costs of arbitration and each party shall bear its own legal fees. This does not change your substantive rights, rather just the potential forums where your disputes can be resolved.

> This agreement to arbitrate includes all disputes regardless of their nature, whether legal or equitable, and whether sounding in tort, contract, statute, regulation, or otherwise. Arbitration is different. There is no judge or jury, but the arbitrator can award damages and relief. Your agreement to arbitration results in your knowing and voluntary waiver of any rights to maintain other available resolution processes, such as court actions or administrative proceedings.

And, you specifically waive your legal right to go to court and have any dispute heard by a judge or jury. Further, you and Bob's agree that each of us may bring claims against the other only on an individual basis and not as a plaintiff or class member in any purported class, or representative or private attorney general action or proceeding. Unless both you and Bob's agree otherwise, the arbitrator may not consolidate or join more than one person's or party's claims, and may not otherwise preside over any form of a consolidated, representative, class, or private attorney general action or proceeding.

126.  Plaintiff was not provided notice of this excessively broad arbitration clause prior to purchasing the Products and Goof Proof.

127.  Instead, Plaintiff was presented with this document after she completed her purchases, which is evident because these terms are present on the physical receipts, which could only be generated after their payment information was processed and applied to their purchases.

128.  Defendant Bob's Discount Furniture, LLC, is a Delaware limited liability company with a principal place of business in Stamford, Connecticut, Fairfield County.

129.  Defendant Guardian Protection Products, Inc., is a North Carolina corporation with a principal place of business in North Carolina.

130.  Plaintiff relied on the representations that the Goof Proof plans would cover the incidents on which she may have sought coverage – from accidental damage and/or inadvertent misuse, i.e., a "goof."

131.  Plaintiff would not have purchased the Goof Proof plans if she knew the representations were false and misleading.

132.  Plaintiff was convinced and persuaded to buy the Goof Proof plan based on uniform representations made to her by Defendant Bob's salespersons.

133.  Defendant Bob's provides its sales personnel with handbooks which contain information with which to allay customer concerns about purchasing additional protection and to convert them to purchasing the Goof Proof plans.

15

134.   The Goof Proof plans were worth less than what Plaintiff paid and she would not have paid as much absent the false and misleading statements and omissions.

135.   Plaintiff intends to, seeks to, and will purchase the Goof Proof plans again when she can do so with the assurance that the representations are consistent with the coverage she will receive.

Class Allegations

136.   The class will consist of Illinois residents who purchased the Goof Proof plans during the statutes of limitations for each cause of action alleged.

137.   Common questions of law or fact predominate and include whether the representations of Defendant Bob's were and are misleading with respect to what the Goof Proof plans would cover, and whether Defendant Guardian knowingly failed to honor claims submitted under the Goof Proof plans, and if plaintiff and class members are entitled to damages.

138.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

139.   Plaintiff is an adequate representative because her interests do not conflict with other members.

140.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

141.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

142.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

143.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
<u>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

144.  Plaintiff incorporates by reference all preceding paragraphs.

145.  Defendant Bob's and Defendant Guardian's false and deceptive representations, claim practices, and omissions are material in that they are likely to influence consumer purchasing decisions.

146.  Defendant Bob's misrepresented the Goof Proof plans through statements, omissions, ambiguities, half-truths and/or actions.

147.  Defendant Guardian abetted the misrepresentations made by Defendant Bob's, by, upon information and belief, furnishing material and talking points, to be used by salespersons to sell more Goof Proof products.

148.  Defendant Guardian denied claims in bad faith when it knew it should have honored the claims.

149.  Plaintiff relied on the representations of Defendant Bob's.

150.  Plaintiff and class members would not have purchased the Goof Proof plans or paid as much if the true facts had been known, suffering damages.

<u>Breach of Contract</u>

151.  Defendant Bob's and Defendant Guardian created a contract with Plaintiff.

152.  The contract was for the sale of insurance in the form of service contracts.

153.  Defendant Bob's and Defendant Guardian breached the insurance contracts with Plaintiff by denying their claims for coverage.

<u>Violation of the Illinois Service Contract Act</u>

154.  Defendant Bob's and Defendant Guardian purported to sell a service contract to

Plaintiff.

155. The Goof Proof plan received by Plaintiff was not a service contract but insurance.

156. Defendants were and are not authorized to sell insurance and thus, the sale of Goof Proof was unlawful.

157. Plaintiff is entitled to damages for the pecuniary harm she suffered as a result of the premium she paid and coverage she did not receive.

<u>Breach of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

158. The Goof Proof plans were marketed and sold by defendant Bob's, with assistance from Defendant Guardian, and expressly and impliedly warranted to plaintiff and class members as able to cover the events they sought coverage for.

159. Defendant Bob's and Defendant Guardian had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Goof Proof plans.

160. This duty is based on Defendant Bob's outsized role in the market for this type of "service contract," as it holds a substantial amount of public trust in this area.

161. Plaintiff provided or will provide notice to Defendant Bob's and Defendant Guardian's, their agents, representatives, retailers, and their employees.

162. Defendant Bob's and Defendant Guardian received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to their main offices.

163. The Goof Proof plan did not conform to their affirmations of fact and promises due to Defendant Bob's and Defendant Guardian's actions and was not merchantable because it was not fit to pass in the trade as advertised.

164. Plaintiff and class members would not have purchased the Goof Proof plan or paid

as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

165. Defendant Bob's and Defendant Guardian had a duty to truthfully represent the Goof Proof plans, which it breached.

166. This duty is based on defendant Bob's and defendant Guardian's position, holding themselves out as having special knowledge and experience in their respective areas.

167. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant Bob's and defendant Guardian.

168. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Goof Proof plans.

169. Plaintiff and class members would not have purchased the Goof Proof plans or paid as much if the true facts had been known, suffering damages.

## Fraud

170. Defendant Bob's misrepresented and/or omitted the attributes and qualities of the Goof Proof plans.

171. Defendant Guardian intentionally denied claims based on their manuals which contained information on how accidental damage could be recharacterized as attributable to wear-and-tear and other causes for which consumers would not receive coverage.

172. Defendant Guardian promoted and rewarded its employees who were able to process the most claims in definitive periods of time, even though it knew this metric would result in denial of valid claims.

173. Defendant Bob's encouraged its personnel to oversell Goof Proof, knowing this was

a high margin product.

174. Defendant Bob's and Defendant Guardian's fraudulent intent is evinced by their knowledge that the Goof Proof plans were not consistent with its representations and claim processing.

<u>Unjust Enrichment</u>

175. Defendant Bob's and Defendant Guardian obtained benefits and monies because the Goof Proof plan was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:  September 26, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com